The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, Council. This is case number 4-24-0991, People v. Hoskins. First, let's start with appearances. For the appellant. Lucas Hall, on behalf of Robert Hoskins. Thank you. And for the appellate. I'm Enola Taylor, Jr. on behalf of the people of the State of Illinois. Thank you. Mr. Hall, you may proceed with your argument. May it please the Court. Good afternoon, Your Honors, Council. I'm here from the office of the State of the Appellate Defender on behalf of Robert Hoskins. This case is about whether the government could be able to use means not in general public use to discover previously unknowable details about the possible presence of a substance which individuals in Illinois now have a legitimate privacy interest in. In the briefs, I raised three issues, but today I would like to focus my time on the first and second issues. I'd be happy to discuss the third to the extent there are any questions regarding that issue. Although Hoskins was convicted of possession of meth, this case is about the constitutionality of K-9 Max free air sniff in light of changes to Illinois cannabis law. The legalization of cannabis affects this meth case because MAC was trained to detect the odor of cannabis in addition to that of cocaine, heroin, and meth. Now, in 2001, the United States Supreme Court held that the government's usage of a device not in general public use... Mr. Hall, before we get into the merits of your Fourth Amendment issue, I just want to make sure I get my bearings on the posture. You're arguing that trial counsel was ineffective for raising this argument? Your Honor, I am arguing that trial counsel was ineffective for failing to raise the argument that K-9 Max open air sniff... Yes, right. Sorry, misspoke. Would you agree that there is not any direct binding authority on this point, whether a sniff or a trained dog is equivalent to the device in Kylo and therefore constitutes a search without a warrant? Your Honor, I would agree with that, but I would note that in Illinois v. Cavallese, the key distinguishing factor there was that the drug detection dog at had not been trained to detect anything legal because at that point in time, cannabis remained unlawful. Right. But what I'm getting at here is does failing to raise an argument that at that moment has no direct legal support, how can that be ineffective assistance? Is counsel required in general to raise an argument that is not supported by direct legal authority? Your Honor, I believe counsel had a duty to make a good faith argument for the extension of existing law. And that's what he did in terms of the second argument that I made. He argued the search was not supported by probable cause. Right. But you're saying this isn't even a matter that a trial attorney can choose, that if he doesn't raise it, it's ineffectual. Making a good faith argument, I think you've got that ratcheting in the other direction. He can do it if he's making a good faith argument. But you're trying to say he must do it if he can make a good faith argument or else he's ineffective. That seems like a stretch. Your Honor, in the context of the motion to suppress that he did file, that motion was based on a perceived split in authority between the third and the fourth districts at the time. But as you say, not this issue, not the search issue. That is correct, Your Honor. I mean, do you have authority where a lawyer has been found to have been ineffective for failing to raise an argument that wasn't directly supported in the case law? Your Honor, I think it was directly supported in the case law. Well, then my first question wasn't answered in the way I thought it was. I thought you said it was not. There is not direct support in the case law that would say a drug sniffing dog is equivalent to the device at issue in Kylo. Your Honor, I believe that in light of the legalization of cannabis, the existing body of case law naturally should have extended to this argument that counsel should have made. And you don't think an attorney might say this might not be the case to raise this novel new issue when at the suppression hearing there wasn't even mention of marijuana and the drug was also trained on the drug that was found. This just doesn't seem like the ideal case if you're looking to raise the issue, but you're telling me it's ineffectiveness not to Your Honor, cannabis was mentioned at the suppression hearing and that was in the context of the cannabis that was discovered in the hitter box and the backpack in the backseat. But not in an odor proof container. Well, Your Honor, it was arguably an odor proof container because this court has previously held that an odor proof container is one where the police officer cannot detect the odor of cannabis. And we have Sergeant Dykstra testifying at the odor of cannabis. As far as we know, and with the lack of guidance from the Illinois legislature, the hitter box in which the cannabis was discovered was an odor proof container and presumably appropriately sealed if there was no loose leaf cannabis all over the backseat or the backpack. Although that would have been your client's obligation to make that record. Your Honor, that was in the record. No, I got you that there was cannabis that the officer didn't smell it. That's in the record, but how it was packaged or sealed. In fact, I know the only description I saw anywhere it was loose and I'm not sure if that might have more than one meaning. Your Honor, I believe the testimony was it was loose within the hitter box. Okay, thank you. So going back into the constitutional issue and in the case of Kylo, the police officer had used a thermal imaging gun from across the street of the defendant's house at night and the court found that to be inappropriate because the thermal imaging gun could discover details about the home that previously would have been unknowable without physical intrusion. The details that Justice Scalia writing for the court were concerned about were the possibility that this thermal imaging gun could have detected steam emanating from a shower within the home. And that might seem trivial, but it is a legitimate privacy interest according to the United States Supreme Court. About four years later, the United States Supreme Court extended that principle to drug dog sniffs of vehicles. Now, I know vehicles have a lesser expectation of privacy and there's an exception to the warrant requirement that allows automobiles to be searched without a warrant, but those searches must still be supported by probable cause. And in Caballese, the United States Supreme Court specifically said that this is not like the case of a thermal imaging gun and it's not like the case of a thermal imaging gun because the dog is only going to detect unlawful substances. Obviously, in the present case, the dog was trained to detect the substance that is now legal. Therefore, the logical extension of those principles means that... I have a question. Isn't it true that the dog was trained to detect cannabis, but was also trained to detect methamphetamine, cocaine, and heroin, among other illegal substances? Yes, that is correct, Your Honor. And what reason is there to think that somehow the dog's alerting in this case was based to cannabis as opposed to the methamphetamine, which was found in a greater quantity anyway? Your Honor, to this day, we still don't know whether the dog was to the methamphetamine or the cannabis. There's simply no information in the record. Well, we know there was methamphetamine found in the car. We know the dog was trained to find methamphetamine, don't we? Yes, Your Honor. And we also know there was cannabis. Is there a reasonable inference from that that the dog might have alerted due to the presence of the methamphetamine? Well, Your Honor, the focus should be on what's happening before the search, not the product of the unlawful search. Remember in... What happened before the search is the dog alerted. The dog trained for the presence of methamphetamine, heroin, cocaine, and cannabis, right? To push back on that, Your Honor, the dog sniff itself was a search. And that was not supported by probable cause. You mean having a dog walk around the car is now a search? Yes, Your Honor. In light of the an odor of a substance that's completely lawful to possess. And in Kylo, they didn't find steam coming out of a shower. They found over a hundred cannabis plants in the garage. And the Supreme Court specifically said we can't be concerned about whether this thermal imaging gun is going to reveal things about the home that we don't really have a legitimate privacy interest in. And that's because the concern is what happens before the search. We don't want officers post hoc justifying the search on the grounds that it turned up something unlawful. We wouldn't have any body of case law suppressing any evidence ever if that were the standard. So at the time trial counsel filed his motion to suppress on the grounds that Max Open Air did not provide probable cause for a subsequent search. If case law in Illinois was in flux, the third district had held that the odor of burnt cannabis standing alone did not give probable cause for a search of a vehicle. Whereas this court in Molina had held that the odor of raw cannabis standing alone did provide probable cause for the search. And isn't that where we've ended up? Isn't the law in the same place? Yes, it is, your honor. And the crucial factor in this case is we don't know whether the dog is picking up the odor of burnt cannabis or the odor of raw cannabis or the residual odor of cannabis that had been in the vehicle at any other point in time. Now, because the dog has the potential to alert to this residual odor of burnt cannabis, that transforms the open air sniff into a search necessarily because he's detecting wholly lawful activity. I think you misspoke. You meant raw cannabis, not burnt. Well, in the case of raw cannabis, your honor, I believe the dog could be detecting raw cannabis within an odor-proof container, i.e. something that the police officer could not smell, but the dog could. But the case law has developed that an officer smelling burnt cannabis is still probable cause. No, your honor. Okay. Are you meaning then to say that a dog sniff of that detects burnt cannabis is a search? Yes, your honor. Even though it's not legal in terms of burnt cannabis. The odor of burnt cannabis no longer establishes probable cause in the state of Illinois, your honor. That's the Supreme Court's holding in Redmond. Mr. Hall, you said something earlier and I just want to verify that this is what you in fact said, that the officer here did not smell cannabis. Therefore, according to Illinois case law, that meant that the cannabis was in an odor-proof container. Is that what you said? Yes, your honor. And that was based on this court's holding and People v. Molina before it to the Illinois Supreme Court. This court had said that there's no definition of an odor-proof container within the Cannabis Regulation Act. And the meaning of that, according to this court, was that the cannabis is detectable by smell by a police officer. Well, so here, I think you indicated that the officer did not smell cannabis, correct? Yes, your honor. That is correct. Is that the same thing as saying that the officer could not? Let me start over again. Is that the same thing as saying that a person could not smell cannabis in the vehicle just because the officer didn't smell it? Does that mean that he could not smell it? Your honor, I don't think that necessarily is the case. Presumably, if the officer got his nose close enough to the backpack, at some point he may have detected the odor of cannabis within that bag. But that's not what happened in this case. No, but you see the point though, counsel. If the officer smells it, it's obviously not an odor-proof container. Yes, your honor. But if an officer does smell it, I'm sorry, does not smell it, it doesn't really tell us if it's in an odor-proof container or just because of the circumstances the officer didn't smell it. I don't think the inference runs the other way. And I would agree with that, your honor. But getting back to the point in this case, the question is what the dog had the ability to smell. And if the dog had the ability to smell the odor that was emanating from a lawful source, a wholly lawful odor, then his conduct in performing an open-air sniff of the vehicle constitutes a search. And the whole point of having these drug dogs is that they can detect odors that police officers cannot detect. They have been applied outside of the residential setting. In Kibayes, your honor, Kylo was specifically mentioned in the context of a dog sniff of a vehicle. And as I had mentioned, the court specifically said that the distinguishing factor was the dog's inability to distinguish between or inability to detect lawful substances. And the Illinois Supreme Court on remand from the United States Supreme Court specifically said that the dog sniff is not content discriminating. You know, the dog is only picking up unlawful activity. But since then, what is lawful has changed. How much of your argument is premised on the assumption that a dog sniffing, or excuse me, marijuana sniffing dog can detect marijuana in an odor-proof container? I think a fair amount of reliance is placed on that comment, your honor. Okay. And you said common sense, right? Yes, your honor. Okay. In Mallory, we noted that the record wasn't developed by defendant at the trial court level that dogs would be able to smell marijuana that were stored in a odor-proof container, right? Yes, your honor. Okay. Why are you saying that that finding was in opposite, that there was no reason to be saying that because common sense should have dictated to us in that case that dog sniffing, or excuse me, truck sniffing dogs can detect the odor of cannabis coming out of an odor-proof container. I don't understand how we could be true to Mallory and accept your proposition here. Okay. Your honor, I think it comes back to the statements of the dissenting justices in Molina. They spent some time discussing how common sense dictates that the odors coming from cannabis last for a long time and they linger. And someone might open and odor-proof container and have that odor remaining on their persons. And this court recognized in Flora that Mac, the drug dog at issue in this case, had the ability to detect residual odors. So even if this court were to find that the dog could somehow not smell through an odor-proof container, then this court could still reverse the trial court because the dog could have been detecting the odor that was just residual. Was there any evidence that would support that? How would we make that finding? Your honor, we wouldn't need to make the finding that there was the residual odor of cannabis in the vehicle. All we would need to find is that the dog had the ability to detect the residual odor of cannabis. Because if a police officer detects the odor of burnt cannabis emanating from a vehicle, whether residual or not, that's not even a suspicious fact that lends to probable cause. And it's not a suspicious fact because cannabis is lawful. But in Kylo, they didn't just say, well, we all assume that this thermal imaging can tell what's going on in the house. They had a record that told them what it could do. And we don't have a record that tells us what the dog is capable of doing. Isn't that a problem? Your honor, I think that lends more support to the ineffective assistance argument where counsel should have made this argument and developed that record. But I think there's... But to know if it's prejudicial, we have to know those facts. So I think in a direct appeal, the absence of the record is still going to be a for you. Your honor, the common sense considerations as identified by the dissenting justices of the Illinois Supreme Court, I think lend support to this argument that it's a matter of common sense that drug dogs could smell these residual odors if police officers can smell these residual odors. Again, we wouldn't have police dogs if they could only smell exactly what police officers were able to smell. On the question of the record, I'm looking at the transcript. It says, I believe there was some cannabis. It doesn't say what it was in. There was a hitter box and a pipe inside of that. That doesn't really tell us what the cannabis was contained in. No, it doesn't, your honor. But we do know that Sergeant Dykstra could not detect the odor of any cannabis. And I see my time expired. If I could briefly conclude. You can conclude. Your honor, for the reasons stated here today, I would ask that this court reverse the decision of the trial court in denying the motion to suppress and also find that the open air sniff was itself a search and that counsel was ineffective for failing to make that argument. Thank you, your honors. Okay. Thank you, Mr. Hall. You'll have time in rebuttal. Mr. Taylor, you may proceed with your argument. Thank you, your honor. Good afternoon, your honors. Good afternoon, counsel. My name is Ivan O. Taylor, Jr. on behalf of the people of the state of Illinois. This court should affirm defendant's convictions and sentence per possession of methamphetamine as his trial counsel was not ineffective and the trial court did not air when denied his motion to suppress evidence. I want to start with the question that Justice Dougherty had asked opposing counsel regarding how can counsel be ineffective when this is a wholly new and novel argument, a new creation of the law. And counsel can't be. Our Illinois Supreme Court has stated in Cathy that whether or not counsel is ineffective is based upon the state of law at the time defendant's trial and appeal. And the state of law at the time during this motion to was not a search. It's still not a search. And counsel can't be ineffective for trying to create a new aspect of the law. Counsel, opposed to trying to argue that using Kibayas and Kilo and the decision in Redmond that creates this amalgamation that gave counsel the ability to make this argument. And that just doesn't make any sense. When there's established clear case law that the use of a drug detection dog is not a search, counsel has no meritorious basis to try to argue that there is now a search being occurring. Let's not push it too far. It wouldn't be unmeritorious, it wouldn't be lacking in merit to make the argument, but that's not the same as saying counsel's ineffective for not making it. Even if it's not, you're correct Justice Dougherty, even there might be some merit in making the counsel cannot be ineffective for not doing so because such an argument is a creation of a new law as opposed to making an argument based on established law. Furthermore, with regards to the cannabis in this case that's been mentioned multiple times, there is no evidence within the record to determine how the cannabis was being stored inside that backpack. We don't know what this hitter box is. There's no real explanation about it. We don't know if it was actually in the hitter box or next to the hitter box, but we know it was in the backpack itself. And this really only indicates that this cannabis was not in a sealed and order-proof container as required by the law. So even if MAC had detected on the cannabis as opposed to methamphetamine, this cannabis was being improperly transported, which is illegal. And as this court has stated, the improper transportation of cannabis does give probable cause for a search of the vehicle. So I know there's principle in Fourth Amendment law that we don't look to what was found in an illegal search to justify the search. How does that apply here? Just so that applies here. I think it's mostly, how do I describe this? You're right. We don't look at what was found to justify the search retroactively. The issue is that that kind of assumes that whether or not the use of the drug dog itself, the detection dog, is itself a search. And there's really nothing to really lead to that conclusion in the first place. Defendant speaks to how Kyle always speaks of like, you can't use tools to look inside someone's home because it might be incident activity happening. But Khabib is in case that using a detection dog for a vehicle is fine. Defendant argues that the difference is because a dog is just used to find contraband. And I don't think that's as accurate as defendant makes it seem. Kyle was dealing with the home. The home is effectively sacrosanct when it comes to Fourth Amendment protections among everything else, especially compared to a vehicle, which is transitory in nature. And with drug detection dogs, the only Supreme Court in Burns and Bonilla have held that the use of a drug detection dog at the cartilage of a home is considered search. So even at that time, when Bonilla and Burns were decided, all forms of cannabis and other narcotics were still contraband. And our court still determined that that was a search to use a dog at the home. So it seems to me that the issue between Kyle and Khabib is not whether or not the drug detection dogs used to find contraband is whether or not it was a home versus a vehicle. And since it's a vehicle that's being used as a focus of the detection dog, this puts us in the realm of not being a search under Fourth Amendment state. Taylor, can I ask you a hypothetical here? I want you to assume a drug sniffing dog has been trained to alert to cocaine, methamphetamine, heroin. But in addition, it's also been trained to alert to morphine and oxycodone, okay? Morphine and oxycodone can be illegally possessed if one doesn't have a prescription. It can also be legally possessed if one does have a prescription. Would a sniff, an open air sniff along the same lines of what occurred here be considered a search just simply because in some circumstances, oxycodone and morphine can be unlawfully possessed? I would say, Your Honor, that no, the use of a detection dog would not be a search in this hypothetical because as stated in this case, and this court stated in Mallory and Flora, even though this drug detection dog is able to detect things that are fully contraband and some things that may not be contraband in certain instances, the fact of the matter is, since it can be contraband in certain instances, as with the morphine and oxycodone, which are illegal to possess without prescriptions, it's not a search to use a drug detection dog. Well, what about tobacco? Well, let's say somebody has tobacco in their car. It can be illegal if it's been brought into the country without payment of the proper tariff or tax. It would also very commonly be legally possessed, obviously. Would that be a search? No, it would not be, Your Honor. It would not be a search. So what if it's a cornflakes? I mean, does it have to be something that is never in any circumstance illegal to turn it into a search? Your Honor, I believe in situations that drug detection was able to detect like four types of contraband, methamphetamine, cocaine, whatever, as well as cornflakes, and it's fully legal to possess no matter what would not be a search. My argument is still saying that it's still not a search, that the use of a drug detection dog is just not a search of a vehicle. No matter how many legal things the dog alerts on or is trained to alert on? As long as the dog is also trained to alert on contraband, the use of drug detection dogs to try to find such contraband, even if it was trained on other things that may not be contraband, does not make it a search. That seems to create the potential for some mischief. Potentially, but as you said, these aren't merely hypotheticals. None of these drugs have been trained to find cornflakes or food or tobacco, such as they're trying to find methamphetamine and cocaine and crack. While cannabis was also part of that, I don't believe they're being trained on that as often anymore, but I don't have the details of such other training methods. It's not really in the record itself. Moving on, I believe for precious purposes, even if the trial counsel had made the argument that the use of the drug detection dog was the search itself, there's nothing to indicate that the trial court would have even accepted that argument and granted the motion to suppress evidence. At the time of the suppression motion, I believe it was held in October of 2023, Mallory and Flora were already decided by this court, and this court had already indicated that the use of drugs, even if it can detect cannabis, as long as it could detect other contraband, that such evidence should not be suppressed. In Mallory, we did not address the question analogizing to Kylo and determining whether it was a search. We just addressed whether it was probable cause in that case. You are correct, Your Honor. It wasn't just probable cause. However, those Mallory and Flora do still get guidance to the trial court that indicates that the use of these drug detection dogs is still appropriate and proper, and they're still appropriate and proper in those cases to find probable cause. It's most likely not the trial court would have continued that with the case law from our Illinois Supreme Court and in Conveyance and View that the use of drug dog is not a search. When you use a drug dog for a vehicle, it's not necessarily a search. The defendant really cannot support, cannot demonstrate that if the trial court had, if the trial counsel had presented his argument to the trial court that he would actually succeed on his motion to suppress. He can't prove that. He can't demonstrate he was precious. Moving to the trial court, whether or not it erred by suppressing his motion, there was probable cause to search the vehicle. Now, while the trial court did focus on this court's decision in Mallory, citing to it in its decision saying that, oh, the use of, when the drug detection dog alerts, that gives probable cause to search the vehicle, there were some other factors that contributed to the tally circumstances that gave rise to probable cause to search this vehicle and situation. Prior to the initiation of the traffic stop, the officer, the police were doing a drug investigation. It was Agent Matos who was outside of the Lucky Sam's Tavern. He observed the passenger of the vehicle repeatedly leave the bar to go to the vehicle back and forth multiple times. And when that vehicle, and when the passenger and the defendant finally left the bar fully, he contacted Sergeant Dixtra in order to initiate a traffic stop. And when, after the traffic stop was initiated, Sergeant Dixtra was able to observe the passenger in the backseat of the vehicle lying down, hunched over, trying to hide and breathing extremely heavily. These factors indicate that from the observation of Agent Matos, that the action of the passenger indicative of drug selling. And then the passenger's extreme nervousness at being pulled over and trying to hide in the backseat of the passenger seems to be further indicative of the passenger being involved in some type of drug selling, a drug transaction. And that coupled with the indication by Matt, the drug detection dog, further emphasized the probable cause allowed people to search the vehicle. So, in addition to those facts, as well as this court's established case law in Flora and Mallory, there was probable cause for the search and the trial court did not err from the nine defendants' motion to suppress. While the defendant didn't mention the final claim of ineffectiveness of counsel, people will still want to address it. Before that, the people will note that this court has an independent duty to determine its own jurisdiction. The people believe Rule 472 is applicable here, as the defendant is not arguing that the trial court erred in making the assessment so much as arguing that the trial counsel was ineffective for not filing the certificate as mandated by Rule 404. People just wish to still comment on Rule 472 in case this court considers that final issue, has no jurisdiction to consider that final issue. However, with regards to ineffectiveness of counsel, the people still maintain that counsel was not ineffective for not filing the certificate as mandated by Rule 404. People do know that it was mandatory for counsel to do so. However, the defendant was not present because the defendant filed his own certification of waiver of assessment with the trial court and the trial court did take consideration as to whether to waive assessment and did waive 75 percent of the defendant's assessment. The issue is whether he would be to 100 percent if counsel had filed the certificate. The thing though, if counsel had filed the certificate, there's no indication that defendant would have gotten 100 percent because still the same information at the trial court. That's incorrect because if you look at the certificate the Supreme Court has asked attorneys to file, it just talks about their representation. It doesn't ask for any numbers at all. So, if he had just filed that, it would have been 100 percent and that would have been the end of the question. It's an automatic, in other words, the way that certificate works. You got a PD, it's an automatic. You get 100 percent. People don't recall seeing that in the case law, but that could be my mistake in missing that. It's probably not in the case law, but if you look at the rule and if you look at the form, all it says is, are you a defense attorney? Yep. That's the only thing they're asking to provide. Before we leave the Fourth Amendment issue, I just want to read you a couple of lines from Caballas and just see if you can help me square it with your position. First of all, this is a general thing. No surprise here. Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment. Don't think we disagree on that. But then they go on to hold the use of a well-trained narcotics dog, which they then parenthetically note is one that does not expose non-contraband items that would otherwise remain hidden from public view, generally does not implicate legitimate privacy interests. That's different than saying that if it could detect something that is sometimes illegal, there are no legitimate privacy interests, which seems to be your position. As long as it's detecting something that could sometimes be illegal, there is no legitimate interest in privacy in that item. That's your position, right? The people's main position primarily is that trial counsel is not ineffective for not trying to make this argument in the first place. I hear you. That's a tough issue. But if we do get to the issue, I just want to understand, are you saying that a drug sniffing dog is not conducting a Fourth Amendment search if what they're trained on is at least sometimes not legal? Yes, that is the people's position. That as long as some aspect of what the dog was trained on is still considered contraband, it's not a Fourth Amendment search. Do you counsel have any more questions? Not here. I don't see any other questions. Thank you, counsel. Thank you. The people just maintain that this court should find that trial counsel was not ineffective and that the trial court did not hear in suppressing the evidence. Thank you. Mr. Hall, rebuttal argument? You're muted, counsel. You're muted. Yes, Your Honor. Thank you. So I want to go back to the ineffective assistance of counsel argument. At the time counsel filed his motion to suppress, Mallory, Flora, Stribling, and Redmond had been decided at the appellate court level. And it was pretty clear that this court's position was a drug dog sniff standing alone was sufficient to provide probable cause. Yet counsel made that argument and chose not to that walking the drug dog around the vehicle was in and of itself a search. And I believe that is where he was ineffective because he was making the argument for a modification extension of law, but he failed unreasonably to make the, in my opinion, stronger argument that the dog sniff was itself a search. And because of that, I believe he rendered ineffective assistance. But counsel, I mean, as you've made it here, the argument could have been made, but saying it could have been made as different than saying here, you're ineffective for not raising it. I feel like you're pushing uphill on that. I think it is an uphill push, Your Honor, but I think it was ineffective for failing to make that argument giving, given the existing law at the time, you know, you had Kylo and Caballese and the logical extension of those is that when a dog can detect lawful activity, that is a search and it needs to be supported by probable cause. And that nicely leads me to one of the other issues that counsel spoke about. So I have a question I want to ask you about cannabis. Is it correct to say that it is lawful for a person to possess, excuse me, cannabis in a vehicle only if the following conditions are met? One, the person is an Illinois citizen. Two, the person is over 21 years old. Three, the person possesses no more than 30 grams. Four, the person is not using the cannabis. And five, the cannabis is stored in an odor-proof container. Yes, Your Honor, that sounds correct. I'm not positive on the Illinois resident. Well, that pretty well limits cannabis possession, doesn't it? I mean, you're arguing essentially as if there's no justification for an alert by the drug dog for cannabis because it's legal to possess. But given this list of factors, it's more often not legal to possess than legal to possess. Isn't that correct? No, Your Honor. No, Your Honor, that presumes that individuals in Illinois are transporting their cannabis unlawfully. Well, I mean, we have, from the point of view of the law and the drug dog, if the dog alerts, what reason is there to think that the person possesses no more than 30 grams of cannabis? There isn't any. Well, the cannabis is stored in odor-proof containers. As a matter of fact, there's reason to think it's not because if it were in an odor-proof container, as the law requires, the dog wouldn't be sniffing it, would it? Your Honor, I believe the dog would be sniffing it even through an odor-proof container. And what's the basis of that conclusion? Your Honor, the only other odor-proof container requirement in Illinois law... Wait, wait, wait. You haven't answered my question. Is there anything in the record that supports your claim that a drug dog trained to detect these drugs would not be able to detect or would be able to detect cannabis even if it were in an odor-proof container? Not in the record, Your Honor. But I would argue that if you walked by a dispensary, you would smell the odor of raw cannabis, where all the raw cannabis is supposed to be in an odor-proof container per the only other odor-proof container requirement in Illinois law. So based on that, I would believe that the drug dog is able to detect the odor of cannabis through an odor-proof container. But even if he wasn't detecting raw cannabis through an odor-proof container, he could have detected the residual odor of burnt cannabis or the residual odor of raw cannabis, as this court recognized in Flora. And it's the same dog. But getting briefly back to the probable cause analysis, Sergeant Dykstra testified that he had no probable cause to search prior to the dog sniff. And Sergeant Dykstra also discovered that passenger was hiding in the back seat because he had an outstanding warrant for his arrest. So that suspicious fact was dispelled prior to the time of the search. Therefore, it was no longer suspicious that he was off searching. And I see my time has expired, Your Honor. Yes. Thank you. Thank you both. Counsel, the case will be taken under advisement and the court will issue a written decision.